# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Brandyn Gayler,

      Plaintiff

v.

High Desert State Prison, et al.,

      Defendants

Case No.: 2:17-cv-2429-JAD-EJY

**Order Granting in Part Motion for Summary Judgment**

[ECF No. 36]

Pro se plaintiff Brandyn Gayler brings this 42 U.S.C. § 1983 civil-rights action against five current and former Nevada Department of Corrections (NDOC) employees, alleging that they violated his First Amendment rights when they disciplined him in retaliation for filing grievances during his incarceration at the High Desert State Prison (HDSP).[1]  The defendants now move for summary judgment, arguing that Gayler's abuse of the grievance process rendered his grievance-filing unprotected activity; that two of the defendants did not personally participate in Gayler's discipline; and that they all enjoy qualified immunity from Gayler's suit.[2]

Because the record is devoid of evidence that Defendants James Dzurenda or Brian Williams personally participated in the disciplinary action against Gayler, I grant summary judgment in their favor.  But there is a genuine dispute about whether Gayler's grievances were frivolous and whether Defendants Alexis Lozano, Perry Russell, and David Tristan had a legitimate penological purpose for disciplining him, so I deny their request for summary judgment on those points.  And this genuine issue of fact about the frivolity of Gayler's grievances also prevents me from granting summary judgment based on qualified immunity.  So

---

[1] ECF No. 5.

[2] ECF No. 36.

this case proceeds to trial on Gayler's claim against Lozano, Russell, and Tristan.  But first, I refer it to the pro bono program to see if an attorney can be found for Gayler, and I order the remaining parties to participate in a mandatory settlement conference with the magistrate judge.

## Background

Gayler was incarcerated in protective segregation at HDSP from October 2012 to October 2017.[3]  At the time, Dzurenda was the NDOC director, Lozano was sergeant officer at HDSP, Russell was an associate warden of HDSP, Tristan was NDOC's deputy director of prisons, and Williams was the warden of HDSP.[4]  While at HDSP, Gayler "file[d] a grievance any day he believe[d] that his constitutional rights [were] violated," seeking redress for prison conditions related to food shortages and portions, medical treatment, religious services, work-study opportunities, yard access, and visitation.[5]  He also filed at least three § 1983 lawsuits other than this one, for violations of his First, Eighth, and Fourteenth Amendment rights based on lack of equal access to jobs and prison programs, lack of access to nutritionally adequate food, and lack of access to certain privileges and opportunities in prison.[6]  As of the date the operative complaint was filed, he describes the lawsuits as "pending" and notes that because "many of the constitutional violations alleged" in the lawsuits "are on-going, and continue to occur on new dates as new specific claims, sometimes multiple times per week," he must "grieve[] and exhaust[]" them in order "to pursue civil rights litigation in federal court."[7]

---

[3] ECF Nos. 5 at ¶ 19, 40-1 at 225.

[4] ECF No. 5 at ¶¶ 8–11, 13.

[5] *Id.* at ¶ 34.

[6] *Id.* at ¶¶ 76–80.

[7] *Id.* at ¶¶ 76, 80.  Gayler's complaint alleges that he was retaliated against, in part, for filing these lawsuits.  *Id.* at ¶ 60 ("Russell filed a disciplinary charge for abusing the grievance process

## I.      Administrative Regulation 740

The NDOC inmate-grievance procedure is governed by Administrative Regulation (AR) 740,[8] which prohibits inmates from "abusing the system by knowingly, willfully[,] or maliciously filing frivolous or vexatious grievances."[9]  The grievance process has three levels: informal, first-level, and second-level.[10]  AR 740 was amended on March 7, 2017, to limit inmates to filing "not more than one (1) grievance per seven (7) day week, Monday through Sunday."[11]  AR 740 also outlines the NDOC's grievance-related records-retention policy and acknowledges that "[i]nmates who participate in or utilize the Inmate Grievance Procedure shall not be subjected to retaliation."[12]

## II.     Gayler's discipline

In April 2017, Russell initiated disciplinary proceedings against Gayler and gave him a Notice of Charges[13] for abusing the grievance process, citing seven grievances filed between November 21, 2016, and March 20, 2017,[14] as the basis for the discipline.[15]  Lozano was the Disciplinary Hearing Officer at Gayler's hearing and "found [him] guilty of abusing the grievance process."[16]  Russell prepared a report in which he indicated that the filings were an

---

because Mr. Gayler files grievances and pursues civil rights litigation in federal court.").  In this motion, the defendants focus their arguments on Gayler's grievances only.

[8] ECF No 37 at 6–20.

[9] *Id.* at 17.

[10] *Id.* at 6–20.

[11] ECF Nos. 5 at ¶ 27, 36 at 2, 37-2 at ¶¶ 5–6, 39-1 at ¶ 7.

[12] ECF No. 37 at 10–11.

[13] ECF Nos. 5 at 11, 37-1 at 45.

[14] ECF Nos. 37-2 at 2, 6, 11 and 37-4 at 22.

[15] ECF No. 36 at 4.

[16] *Id*. at 5.

3

abuse of the grievance process for various reasons, including: (1) filing more than one in a seven-day period, (2) filing duplicative grievances for the same issues, (3) appealing a grievance after it had already been granted at the lower level, (4) submitting two appeals to the same level instead of appealing to the next, and (5) failing to attach supporting documentation or speak with a caseworker before filing.[17]

The parties disagree about the consequences Gayler faced after his disciplinary hearing. The defendants recount that Gayler's grievance-filing "was sanctioned with a loss of canteen access for two weeks."[18]  But Gayler declares that he suffered a multitude of penalties, including a transfer to a different housing unit where he was let out of his cell for just three hours each day,[19] being precluded from working a prison job or participating in programs to earn work-study credits, and denial of access to the canteen for 15 days.[20]  He further swears that the disciplinary charges "frustrated and impeded" his future litigation and that his parole eligibility was affected "because his static/dynamic [p]arole [p]oints will be increased" due to the disciplinary charges.[21]

## III.   Summary of this litigation

Gayler initiated this action in September 2017.  After screening, he was left with a single First Amendment retaliation claim against Dzurenda, Williams, Lozano, Russell, and Tristan based on the allegation that they subjected Gayler to adverse disciplinary action for filing

---

[17] *Id*. at 4–5.

[18] *Id.*

[19] ECF No. 5 at 2–3.

[20] ECF No. 40-1 at 225–30, ¶¶ 26–28.

[21] *Id.*

grievances.[22]  Discovery has closed, and all of the defendants now move for summary judgment.[23]

## Discussion

## I.     Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[24]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[25]  If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[26]  Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[27]  "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[28]

---

[22] ECF No. 4.

[23] ECF No. 36.

[24] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[25] *Kaiser Cement Corp. v. Fishbach & Moore, Inc*., 793 F.2d 1100, 1103 (9th Cir. 1986).

[26] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[28] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

## II.      The evidentiary record

I start by addressing Gayler's concern that the declarations of Associate Warden Jennifer Nash (who is not a party in this case) and of Williams are "unauthenticated" because they "fail to establish personal knowledge."[29]  Gayler argues that Nash cannot authenticate the grievance exhibits because she no longer works at HDSP, and he contends that the two declarants' use of the word "familiar" rather than "personal knowledge" renders the declarations inadmissible hearsay.[30]  But authentication is no longer required by the summary-judgment rule.  The 2010 amendment to Federal Rule of Civil Procedure 56 "eliminate[d] the unequivocal requirement" that evidence must be admissible in its present *form* in order to be considered at summary judgment.[31]  Instead, the rule mandates that the *substance* of the proffered evidence be admissible at trial.[32]

Here, the declarations and their contents provide sufficient guarantees that the testimony of these witnesses will be admissible at trial.  Nash and Williams have established their personal knowledge of the information they supply about Gayler's grievances and NDOC procedures generally.  Their use of the word "familiar" does not undermine that personal knowledge.  So I consider all of the exhibits in the record when determining whether summary judgment is available.

---

[29] ECF No. 40 at 22–25.  The defendants initially submitted an unsigned copy of Nash's declaration (ECF No. 37-4 at 18–20) but later submitted a corrected, signed copy.  ECF Nos. 39, 39-1.

[30] ECF No. 40 at 23–24.

[31] *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (unpublished).

[32] *Id*.  *See also* Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment.

**III.      Dzurenda and Williams are entitled to summary judgment because Gayler cannot show that they personally participated in his discipline.**

Dzurenda and Williams seek summary judgment on the claims against them based on a lack of evidence that they personally participated in the retaliation against Gayler.  A defendant is liable under § 1983 "only upon a showing of personal participation by the defendant,"[33] and "[t]here is no respondeat superior liability under [S]ection 1983."[34]  Generally, supervisors are not liable under § 1983 for their employees' actions unless "the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."[35]  A plaintiff "must show that each defendant personally played a role in violating the Constitution,"[36] and "[a]n official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'"[37]

**A.      Dzurenda**

At the time of the disciplinary action against Gayler, Dzurenda was NDOC's Director.[38] The defendants represent that Dzurenda "did not personally participate in the alleged violations" and that he "was not personally involved in the day-to-day management of the various institutions and their inmates."[39]  Gayler responds that "Dzurenda signed the amended AR 740"

---

[33] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[34] *Id.*

[35] *Id.* (citing *Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680–81 (9th Cir. 1984)).

[36] *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (citing *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005); *Taylor*, 880 F.2d at 1045).

[37] *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)).

[38] ECF No. 5 at ¶ 8.

[39] ECF No. 36 at 10.

7

and that he "had personal knowledge that his decision to amend AR 740 . . . would be a form of retaliation against Gayler and other NDOC inmates who use the grievance process to seek better prison conditions."[40]  The defendants counter that Dzurenda's "approval of AR 740 does not equate to personal participation in the disciplinary proceedings against Gayler" and that I "already rejected this argument during screening."[41]  They are correct.  In the screening order, I rejected Gayler's separate First Amendment retaliation claim in which he theorized that the defendants amended AR 740 in retaliation for his grievance-filing.[42]  Only the retaliation claim founded on his discipline for filing grievances remains.  To survive summary judgment on that remaining claim against Dzurenda, Gayler needed to come forward with evidence of how Dzurenda personally participated in his discipline.  Because Gayler hasn't established that Dzurenda was personally involved in any part of that disciplinary action, I grant summary judgment for Dzurenda.

### B.     Williams

When Gayler was disciplined, Williams was HDSP's warden.[43]  The defendants contend that Williams "did not personally participate in every disciplinary hearing" and therefore isn't liable under § 1983.[44]  Gayler responds that Williams "had personal knowledge of and directly or indirectly participated in Russell seeking to file charges against Gayler . . . because he received an electronic carbon copy . . . [of] Russell's email to Tristan."[45]  Gayler provides that email,

---

[40] ECF No. 40 at 13.

[41] ECF No. 41 at 5.

[42] ECF No. 4 at 8–9.

[43] ECF No. 5 at ¶ 10.

[44] ECF No. 36 at 10.

[45] ECF No. 40 at 15.

which shows that in April 2017, Russell emailed Tristan and carbon-copied Williams, requesting to discipline several "serial grievers . . . for abuse of the grievance process," including Gayler.[46] Russell's email states that "Gayler has a bunch he grieves almost everyday [sic]," and he names six other inmates who "all grieve the same way," requesting authorization to "go ahead and start the" Notice of Charges for them.[47]  But there is no evidence that Williams greenlit the discipline or otherwise responded to Russell's email.  And with no evidence that Williams was personally involved in Gayler's discipline, I grant summary judgment for Williams.

### IV.   Genuine issues of fact preclude summary judgment for Lozano, Russell, and Tristan.

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution,"[48] and "[o]f fundamental import to prisoners [is] their First Amendment 'right[] to file prison grievances'"[49] "against prison officials and to be free from retaliation for doing so."[50] A First Amendment retaliation claim in the prison context has five elements.[51]  A plaintiff must allege facts sufficient to show that "(1) a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[52]  Unable to deny personal participation in Gayler's discipline, the

---

[46] ECF No. 40-1 at 4.

[47] *Id.*

[48] *Turner v. Safley*, 482 U.S. 78, 84 (1987).

[49] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004) (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)) (bracket omitted).

[50] *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

[51] *Rhodes*, 408 F.3d at 567–68.

[52] *Id.*

three remaining defendants—Lozano, Russell, and Tristan—dispute two elements of Gayler's First Amendment retaliation claim: whether he engaged in protected activity and whether the disciplinary action reasonably advanced a legitimate penological goal.[53]  They also contend that they enjoy qualified immunity from Gayler's suit.

### A.   There is a genuine dispute about the frivolity of Gayler's grievances and thus whether his filing of them was protected conduct.

Although inmates are not entitled to a "specific prison grievance procedure,"[54] it is well-settled that "[t]he filing of an inmate grievance is protected conduct."[55]  The defendants contend that "[t]he First Amendment does not protect the filing of frivolous grievances" and because Gayler's grievances were "procedurally improper, duplicative, and ultimately frivolous," they do not qualify as protected conduct.[56]  They cite no authority that holds that, when excessive or submitted in violation of prison policy, grievances lose their protected status.  But even assuming without deciding that frivolous grievances do not enjoy First Amendment protection,[57] there remains a genuine issue of fact whether six of the grievances for which Gayler was punished were frivolous, which precludes summary judgment on this element.

---

[53] ECF No. 36 at 6–9.

[54] *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)).

[55] *Watison*, 668 F.3d at 1114 (citing *Rhodes*, 408 F.3d at 568).

[56] ECF No. 36 at 6–7 (citations omitted).

[57] This circuit's precedent suggests that it would hold that frivolous grievances do not enjoy First Amendment protection.  *See Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (quoting in a parenthetical *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) ("Prisoners' grievances, unless frivolous, concerning the conditions in which they are being confined are deemed petitions for redress of grievances and thus are protected by the First Amendment.'") (citations omitted) (emphasis added).  *See also Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996) ("Depriving someone of a frivolous claim . . . deprives him of nothing at all").

1          ### 1.    *Grievance 36981*[58]

2          The first grievance listed in Russell's disciplinary report is 36981, for which Gayler filed

3   an informal grievance on November 14, 2016,[59] because he was "not being afforded chapel

4   every day and night of the week like similarly situated inmates at" other Nevada prisons.[60]  This

5   grievance was denied a week later because "[t]here are 31 religious services in 6 days a week in

6   the Chapel.  For safety and security reasons, it is impossible for any inmate to come to Chapel

7   everyday [sic], and since this inmate is a [protective-custody] inmate, their day to come up is

8   Wednesdays."[61]  The defendants argue that Gayler violated AR 740 by filing this grievance

9   because he appealed the first-level grievance response "back to the First Level, as opposed to

10  appealing to the Second Level grievance,"[62] but they present no evidence of his allegedly

11  improper appeal.  In his declaration, Gayler states that he has "personal knowledge that the

12  [d]efendant[]s did not include [his] first-level grievance filed after Chaplain Calderon's response

13  because it was rejected at the first level by Perry Russell so [he] had to submit a first-level

14  grievance."[63]  Gayler has thus shown that there is a genuine issue of material fact about how this

15  grievance was submitted and handled.

16

17

---

18  [58] The relevant grievance numbers all begin with "2006-30."  For clarity, I refer to the grievances

19  by their unique digits only and omit the repetitive ones, except where I quote from documents
    that use the entire number.

20  [59] Russell's disciplinary report notes that Grievance 36981 was rejected on February 15, 2017.
    ECF No. 37-1 at 45.  But the Informal Grievance Form Gayler filed indicates he filed it on

21  November 14, 2016.  ECF No. 37-2 at 3.

22  [60] ECF No. 37-2 at 3.

    [61] *Id.* at 2.

23  [62] ECF No. 36 at 6.

    [63] ECF No. 40-1 at 228, ¶ 17.

11

### 2.   *Grievance 43207*

Next is Grievance 43207, which Gayler filed on an unknown date for an unknown issue.[64]  These facts are unknown because the defendants do not provide evidence of this grievance.[65]  They state that the NDOC "continues to search for" this grievance report and represent, without evidence, that Grievance 43207 was denied because Gayler "failed to attach supporting documentation and failed to speak with the caseworker prior to filing."[66]  But AR 740 does not require inmates to speak with a caseworker prior to filing a grievance, nor does it require specific supporting documentation.[67]  Though AR 740 bars inmates from filing an informal grievance unless they first fail "to resolve the matter by other means such as discussion with staff or submitting a kite,"[68] without evidence of the grievance, I cannot determine whether Gayler met that requirement.  Although AR 740.05(5)(A) states that "[a]ll documentation and factual allegations available to the inmate must be submitted at this level with the grievance,"[69] without a hint about the nature of this grievance, I cannot determine whether supporting documentation was required.  It is also unclear how far through the grievance process Gayler proceeded with Grievance 43207, so it is unknown how much documentation was missing.

---

[64] *See* ECF No. 36 at 6.

[65] *See* ECF No. 37-2 at 4.  The defendants provide no explanation for why they didn't follow their own records-retention policy, AR 740.02, which requires that "[g]rievance files shall be maintained at each institution for a minimum of five (5) years following final disposition of the grievance."  ECF No. 37 at 8.

[66] ECF No. 36 at 4.

[67] *See* ECF No. 37 at 6–20.

[68] *Id.* at 11.  "In prison terminology, a kite is a form used by prison inmates to communicate with staff."  *Richey v. Dahne*, 807 F.3d 1202, 1205 n.3 (9th Cir. 2015).

[69] ECF No. 37 at 12.

Neither of the defendants' sworn declarations discusses the contents of this grievance or explains why it is missing.[70]

### 3.   *Grievance 43208*

Gayler filed informal Grievance 43208 on February 15, 2017, because "on a majority of nights and mornings and lunches, the alternative diet does not serve what it says in the meal" and thus lacks sufficient nutrients.[71]  Russell returned the grievance to Gayler, rejecting it because he had filed more than one grievance per week and because he failed to first kite the issue.[72]  In their motion, the defendants explain that 43208 was "harassing because it was the third grievance that Gayler filed within a seven[-]day period."[73]  Their own evidence is inconsistent, however, because Russell's rejection of 43208 indicates that only "2 grievances were submitted" that week, not three.[74]  The defendants also fail to provide evidence of the other grievances that Gayler submitted that week—whether one or two others.  Notably, the defendants concede that AR 740 was not amended to limit inmates to one grievance per week until March 7, 2017, which was *after* Gayler allegedly filed more than one in a week,[75] so it would have been impossible for Gayler to violate a policy that didn't exist when he filed 43207.

---

[70] *See* ECF Nos. 37-2 at 27–29, 39-1 at 2–4.

[71] ECF No. 37-2 at 7.

[72] *Id.* at 6.

[73] ECF No. 36 at 7.

[74] ECF No. 37-2 at 6.

[75] ECF Nos. 5 at ¶ 27, 36 at 2, 37-2 at ¶¶ 5–6, 39-1 at ¶ 7.

### 4.   *Grievance 40797*

Gayler filed informal Grievance 40797 on January 17, 2017, because the showers and rooms in his unit were "really cold," at an estimated 40 to 50 degrees Fahrenheit, "maybe less."[76] It was winter, and Gayler reported that he and the other inmates in his unit only had warm water in their showers on approximately five days between November 2016 and January 2017.[77]  He explained that he and other inmates were so cold that they had to wear layers of clothing and were "lethargic."[78]  He noted that he had talked to a lieutenant at the prison two days earlier and was told the issue would be fixed, but it wasn't.[79]  On January 24, 2017, an HDSP official granted Gayler's grievance and noted that the heating system had been successfully repaired.[80] On February 15, 2017, Gayler progressed to the next level of the process by filing a first-level grievance and stating that his informal "grievance was upheld, recognizing that the living conditions, room, and water temperature were problematic for two months, an accumulative condition violating" his Eighth Amendment rights.[81]

Russell returned the grievance to Gayler on February 20, 2017, rejecting it because Gayler's informal grievance had already been granted and there was no reason for him to appeal to the next level.[82]  AR 740.03(6)(C) states that "[i]f the Grievance is 'Granted' at any level, the grievance process is considered complete . . . and the inmate cannot appeal the decision to a

---

[76] ECF No. 37-2 at 13.

[77] *Id.* at 14.

[78] *Id.*

[79] *Id.* at 13.

[80] *Id.* at 11.

[81] *Id.* at 10.

[82] *Id.* at 9.

higher level."[83]  There does not appear to be any genuine dispute of fact as to Grievance 40797

because Gayler shouldn't have appealed the grievance decision to the next level when his initial

request had been granted and the problem resolved.  Nothing in Gayler's appeal indicates that the

temperature issue was ongoing, and Gayler offers no additional evidence to support the non-

frivolity of this grievance considering this undisputed status.

### 5.     Grievance 43250

Next is Grievance 43250, which Gayler filed on an unknown date for an unknown

issue.[84]  The defendants cannot locate this grievance[85] and explain, without evidence, that

Grievance 43250 was denied because it "was duplicative of another grievance."[86]  But the

defendants provide no evidence of the contents of this grievance, nor do they provide evidence of

the one it duplicated.  The only specific information defendants present about 43250 is in

Russell's disciplinary report, which states that "[o]n 2/24/2017[,] Inmate Gayler wrote an

improper grievance 20063043250 for grieving the same issue more than once—food shortage."[87]

Neither of the defendants' sworn declarations discusses the contents of this grievance or explains

why it is missing.[88]  Gayler declares that all of his grievances in Russell's report were filed

"about new incidents, occurring on new dates, with a reasonable arguable legal or factual basis to

---

[83] ECF No. 37 at 10 (emphasis omitted).

[84] *See* ECF No. 36 at 7.

[85] *See id*. at 4, n.4 and ECF No. 37-2 at 15.

[86] ECF No. 36 at 4.

[87] ECF No. 37-1 at 45.

[88] *See* ECF Nos. 37-2 at 27–29, 39-1 at 2–4.

1   seek better conditions at HDSP,"[89] creating a genuine issue of fact about the contents and

2   validity of this grievance.

3         *6.     Grievance 43670*

4         Next is Grievance 43670, which is listed in the defendants' motion[90] and in Russell's

5   disciplinary report[91] as a basis for Gayler's discipline, but a copy is not included in the

6   defendants' exhibits, nor is it "omitted" like Grievances 42307 and 43250 (for which the

7   defendants filed placeholder exhibits and indicated the NDOC cannot find documentation of the

8   grievances).[92]  Russell's disciplinary report states that "[o]n 03/02/2017[,] Grievance

9   20063043670 was rejected for doing more tha[n] 1 grievance in a 7[-]day period."[93]  But the

10   defendants provide no evidence of when Gayler allegedly filed another grievance in the same

11   one-week period, and it is also unclear when Gayler filed 43670, as the defendants merely

12   indicate it was *rejected*—not filed—on March 2, 2017.[94]  Neither of the defendants' sworn

13   declarations discusses the contents of this grievance or explains why it is missing.[95]

14         *7.     Grievance 44616*

15         Last is Gayler's informal grievance 44616, filed on March 16, 2017, stating he and other

16   inmates "were on lock down because the facility did not want to pay the officers overtime."[96]

17   On March 20, 2017, Russell returned the grievance to Gayler, rejecting it because it was "a

18

---

19   [89] ECF No. 40-1 at 226, ¶ 8.

    [90] ECF No. 36 at 4.

20   [91] ECF No. 37-1 at 45.

21   [92] ECF No. 36 at 4, n. 3–4.

    [93] ECF No. 37-1 at 45.

22   [94] *Id.*

23   [95] *See* ECF Nos. 37-2 at 27–29, 39-1 at 2–4.

    [96] ECF No. 37-4 at 23.

duplicate of other grievances regarding being shorted yard time."[97]  Curiously, Russell's

disciplinary report does not list Grievance 44616, but instead lists "44646," as the basis of

Gayler's discipline, stating that "[o]n 03/20/2017[,] Grievance 20063044646 was deemed

improper due to grieving the same issue more than once—shortage of yard time."[98]  It is unclear

whether Russell's reference to 44646 is a typographical error or whether he is referring to a

different grievance altogether.  The defendants don't provide evidence of the duplicate

grievances that Gayler allegedly filed, and again, Gayler states that all of his grievances in

Russell's report were filed "about new incidents, occurring on new dates" and that it is his

"belief that [he] never filed a duplicate of the grievances used in Russell's report."[99]


        In sum, all but one of the seven at-issue grievances is either missing from the record, did

not violate NDOC's grievance policy, or both.  The net result is that the defendants have

established the frivolity of just one of the seven grievances for which Gayler was punished, and

it cannot be determined from this record whether the rest of Gayler's grievances were frivolous

and thus undeserving of First Amendment protection, particularly when viewed in the light most

favorable to Gayler.  So there are genuine issues of material fact about whether Gayler was

punished for engaging in protected activity.

---

[97] *Id.* at 22.

[98] ECF No. 37-1 at 45.  At the end of Russell's disciplinary report, he discusses some additional grievances that Gayler allegedly filed in April 2017, deeming them "frivolous and vexatious per AR 740," too, in part because they duplicate other grievances.  *Id.*  But the defendants fail to provide associated grievance numbers or any evidence of the duplication.  And these are among the grievances that Gayler declares were "about new incidents."  ECF No. 40-1 at 226, ¶ 8.

[99] ECF No. 40-1 at 226, ¶¶ 8, 31.

1
2

**B.    There is also a genuine dispute about whether the defendants had a legitimate penological reason for disciplining Gayler.**

3    Of course, even constitutionally protected conduct can be subject to regulation.  The

4 Supreme Court held in *Turner v. Safley* that "when a prison regulation impinges on inmates'

5 constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

6 interests."[100]  The defendants contend that AR 740's limitation on Gayler's grievance rights is

7 exactly that kind of permissible regulation.  They provide "a general justification for a neutral

8 process"[101] and suggest that the prison adopted this policy to "maintain[] order and protect[]

9 resources" to "ensure there was sufficient time to respond to each grievance on the merits."[102]  In

10 making their argument, the defendants cite *Hines v. Gomez* and assert that prison officials merely

11 "must have more than 'some evidence' to support the challenged disciplinary charges."[103]

12    But the Ninth Circuit clarified in *Bruce v. Ylst* that the "some evidence" standard does not

13 apply to all retaliation claims.[104]  "Prison officials may not defeat a retaliation claim on summary

14 judgment simply by articulating a general justification for a neutral process, when there is a

15 genuine issue of material fact as to whether the action was taken in retaliation for the exercise of

16 a constitutional right."[105]  Instead, they must show that the stated penological goals were

17
18
19

---

[100] *Turner v. Safley*, 482 U.S. 78, 89 (1987).

20 [101] *Bruce*, 351 F.3d at 1289.

[102] ECF No. 36 at 8.

21 [103] *Id.* at 7 (quoting *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997)).

22 [104] *Bruce*, 351 F.3d at 1289.

23 [105] *Id.* (citing *Cornell v. Woods*, 69 F.3d 1383, 1388–89 (8th Cir. 1995); *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995); *Smith v. Maschner*, 899 F.2d 940, 948–49 (10th Cir. 1990)) (emphasis omitted).

legitimate ones[106] and that the disciplinary action against Gayler "in this circumstance reasonably advanced such goals."[107]  Because the defendants offer only a general justification for adopting AR 740 and purportedly punishing Gayler under this grievance-limitation policy, they have not met their burden to show that there is no genuine dispute that Gayler was punished for a legitimate penological purpose.

## V.   The issues of fact regarding the frivolity of Gayler's grievances also preclude summary judgment on defendants' qualified-immunity defense.

Defendants contend that they are entitled to summary judgment for the separate reason that qualified immunity shields them from Gayler's suit.  Qualified immunity protects government officials "from money damages unless a plaintiff pleads facts showing that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct."[108]  Courts "have discretion to choose which qualified-immunity prong to address first" and, depending on the conclusion reached for the first-analyzed prong, "need not address the other."[109]  "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment."[110]

I start with the clearly established-law prong of the qualified-immunity analysis.[111]  To determine if a right was clearly established at the time of the alleged violation, courts look "to

---

[106] *Id.*

[107] *Shepard v. Quillen*, 840 F.3d 686, 692 (9th Cir. 2016).

[108] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[109] *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (departing from the mandate in *Saucier v. Katz*, 533 U.S. 194, 207 (2001), that the first question must be resolved first)).

[110] *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

[111] *Ashcroft*, 563 U.S. at 735 (citing *Pearson*, 555 U.S. at 236).

the [United States] Supreme Court and Ninth Circuit law existing at the time of the alleged act."[112]  This standard is met only if the right's "contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right."[113]  "[E]xisting precedent must have placed the statutory or constitutional question beyond debate,"[114] meaning that courts must not "define clearly established law at a high level of generality."[115]  So "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established."[116]

The particular conduct at issue here is Gayler's grievance-filing that Russell stated as the basis of Gayler's punishment.  In the Ninth Circuit, it was "well-established" at the time of that discipline that "prisoners have a First Amendment right to file prison grievances" and that "[r]etaliation against prisoners for their exercise of this right is itself a constitutional violation[] and prohibited as a matter of clearly established law."[117]  While the defendants argue that Gayler's grievances were not constitutionally protected because they were frivolous, duplicative, harassing, or violated the prison's grievance policy, there are genuine disputes of material fact about the nature of those grievances, so I cannot on this record conclude that their characterization is right.[118]  And even if prisons can discipline inmates for abusing a grievance

---

[112] *Quiroz v. Short*, 85 F. Supp. 3d 1092, 1107 (N.D. Cal. 2015) (quoting *Cmty. House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010)).

[113] *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (internal quotation marks omitted).

[114] *Id*. (internal quotation marks omitted).

[115] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (alteration in the original) (quoting *Ashcroft*, 563 U.S. at 742).

[116] *Id*. (internal quotation marks omitted) (emphasis in original).

[117] *Brodheim*, 584 F.3d at 1269 (internal quotation marks and citations omitted).  *See also Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (describing the history of the Ninth Circuit's recognition of this "clearly established law").

[118] *See supra* at pp. 11–17.

process, there are also genuine issues of fact whether Gayler abused this one, particularly when the one-grievance-per-week limitation wasn't yet in effect when Gayler filed some of his at-issue grievances;[119] and defendants' inability to even produce several of those grievances, coupled with Gayler's sworn representations about them, calls into question the accuracy of the defendants' determination that his grievances violated AR 740.

As the Ninth Circuit explained when presented with a similar record in *Shepard v. Quillen*, "[b]ecause the analysis of a retaliation claim is largely subjective, it's difficult to determine at the summary judgment stage whether a reasonable officer in [the defendant's] position would have known he was violating the law" by placing the prisoner-plaintiff in administrative segregation after he reported officer misconduct, purportedly based on the belief that a prison regulation required him to do so.[120]  "[A] jury could determine that [the officer] was motivated by retaliatory animus.  But a jury could also conclude that [he] was relying on what he reasonably thought was a prison policy.  In the latter circumstance he wouldn't have violated any right, let alone a clearly established one.  But in the former, [the defendant] would have been 'knowingly violating the law.'"[121]

Similarly, I cannot determine at this summary-judgment stage whether the defendants reasonably knew they were violating the law by punishing Gayler for filing grievances.  A jury could find that Gayler's grievances were not frivolous and did not violate the policy and that his punishment was motivated by retaliatory animus.  But it could also determine that the defendants' assessment of Gayler's claims was accurate and that they were relying on what they

---

[119] ECF Nos. 5 at ¶ 27, 36 at 2, 37-2 at ¶¶ 5–6, 39-1 at ¶ 7.

[120] *Shepard*, 840 F.3d at 693.

[121] *Id.*

reasonably believed was an enforceable policy.  And when, as here, "there are disputed factual issues that are necessary to a qualified[-]immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity."[122]  Like the defendant in *Shepard,* the defendants also argue that they "were merely enforcing an active regulation, [so] they were not on notice that they may be violating a constitutional right by bringing disciplinary charges."[123]  But, as the *Shepard* panel noted, *Bruce* clearly established that prison officials may not abuse a valid procedure 'as a cover or a ruse to silence and punish' an inmate," so "no reasonable prison official could" read a prison regulation to authorize prison officials "to retaliate against prisoners" for seeking redress of grievances.[124]  Because triable issues of fact must be resolved before the defendants' entitlement to qualified immunity can be determined, I deny the defendants' motion for summary judgment on this theory.

## Conclusion

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **[ECF No. 36] is GRANTED in part**:

- Summary judgment is GRANTED in favor of Dzurenda and Williams; and with good cause appearing and no reason to delay, **the Clerk of Court is directed to ENTER PARTIAL FINAL JUDGMENT in favor of Defendants Dzurenda and Williams** and against Gayler on the claims against them.

- In all other respects, the motion is DENIED.

---

[122] *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019) (quoting *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017)).

[123] ECF No. 36 at 12–13.

[124] *Shepard*, 840 F.3d at 694 (quoting *Bruce*, 351 F.3d at 1289).

- This case proceeds on Gayler's First Amendment retaliation claim against Russell, Tristan, and Lozano only.

IT IS FURTHER ORDERED that **this case is referred to the Pro Bono Program** adopted in General Order 2016–02 for the purpose of screening for financial eligibility (if necessary) and identifying counsel willing to be appointed as counsel for Plaintiff Brandyn Gayler at no expense to him.  The scope of appointment will be for all purposes through conclusion of trial.  By referring this case to the Pro Bono Program, I am not expressing an opinion on the merits of the case, and there is no guarantee that the program will be able to find Gayler a lawyer willing to represent him at no cost.  The **Clerk of Court** is directed to forward this **order to the Pro Bono Liaison**.

IT IS FURTHER ORDERED that this case is **REFERRED to the magistrate judge for a mandatory settlement conference** between the remaining parties (Gayler, Russell, Tristan, and Lozano).  The parties' deadline for filing the proposed joint pretrial order is stayed until 20 days after the settlement conference, should this case not resolve.

_____
U.S. District Judge Jennifer A. Dorsey
September 29, 2021